

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

NJM:MAA  
F. #2017R01183

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

August 19, 2025

<u>By ECF and Email</u>

The Honorable Ann M. Donnelly  
United States District Judge  
Eastern District of New York  
225 Cadman Plaza East  
Brooklyn, New York 11201

    Re:  United States v. Rasheedul Mowla  
       <u>Docket No. 18-CR-487 (AMD)</u>

Dear Judge Donnelly:

    The government respectfully submits this letter in advance of defendant Rasheedul Mowla's sentencing, which is scheduled for August 26, 2025. On April 17, 2025, the defendant pleaded guilty, pursuant to a plea agreement, to Count Two of a two-count indictment (the "Indictment") charging him with attempting to provide material support to the Islamic State of Iraq and al-Sham ("ISIS"), a designated foreign terrorist organization ("FTO"), in violation of 18 U.S.C. § 2339B. For the reasons below, the government respectfully submits that the Court impose a meaningful sentence, which is sufficient, but not greater than necessary, to achieve the goals of sentencing.

I.  <u>Background</u>[1]

  A.  <u>ISIS</u>

    ISIS is an FTO that, since 2013, has conducted numerous terrorist attacks around the world in furtherance of its goal of forming a fundamentalist, repressive, and intolerant Islamic state, also referred to as a "caliphate" or "khilafah" by ISIS supporters. *See* PSR ¶ 7. At various times, ISIS has controlled territory in Syria, Iraq, and Libya, and also maintained a presence in

---

[1]   The information below is taken from the Presentence Report issued by the U.S. Probation Department ("Probation") on July 22, 2025 (the "PSR"); the Court's February 7, 2022 decision denying the defendant's motion to suppress (the "Suppression Decision"); and other evidence gathered as part of the investigation and prosecution of the defendant.

other countries. ISIS has executed and claimed credit for numerous deadly terrorist activities, including attacks against Americans in the United States and against Westerners abroad. ISIS was the deadliest terrorist organization in the world between 2014 and the end of the Indictment period, during which the defendant sought to join and die for the organization.

> B. The Defendant's Attempt to Provide Material Support to ISIS

In early 2016, the defendant—a U.S. citizen and Brooklyn resident—met co-conspirator Parveg Ahmed, *see United States v. Ahmed*, No. 17-CR-378 (AMD), at a mosque they both attended. The defendant subsequently demonstrated increased religiousness and mosque attendance. During that time, Ahmed involved the defendant in Ahmed's plan to join ISIS in Syria.

In 2017, the defendant and Ahmed traveled to the Middle East with the goal of traveling to ISIS-controlled territory, joining ISIS, and fighting and martyring themselves in support of ISIS's violent aims. In advance of the trip, at Ahmed's direction, the defendant sold his gaming system to raise money, which the duo used to buy a smartphone to facilitate their travel to ISIS-controlled territory while abroad. *See* PSR ¶ 15.

On or about June 1, 2017, the defendant and Ahmed, along with members of Ahmed's family, traveled from the United States to Saudi Arabia, purportedly to celebrate an Islamic religious holiday. *See id.* ¶ 14. Shortly thereafter, on or about June 9, 2017, Ahmed feigned illness to separate from his family members. *See id.* ¶ 15. The defendant and Ahmed then attempted to travel to ISIS-controlled territory in Syria. On or about June 16, 2017, the defendant was apprehended before entering Syria, having exited Saudi Arabia and entered Jordan en route to Syria. *See id.* ¶¶ 15-16.

Devices recovered from the defendant and Ahmed revealed violent ISIS-associated images, including a photo of five men hanging by their necks with the caption "Gay men to be hanged," text messages justifying the September 11, 2001 World Trade Center attacks, and a photo of ISIS's then-leader Abu Bakr al-Baghdadi. *See id.* ¶ 17. One of the devices recovered from the defendant and Ahmed contained messages to third parties indicating their desire to "make hijrah," the term used by jihadist extremists to refer to travel to ISIS-controlled territory. *See id.* The device also contained a draft message, dated June 15, 2017, stating:

> [W]e have made it to Dawlatul Islam [ISIS] in Syria. In sha Allah [God willing] we will join the Jihad very soon and in Sha Allah [God willing] we will then join the ranks of the Shuhada [martyrs]. The West has invaded the land of the Muslims and is constantly attacking it.

*Id.* In addition, the devices contained search results for locations controlled by ISIS. *See id.*

The defendant was interviewed by U.S. law enforcement agents on or about August 25, 2017, and August 29, 2017, after waiving his *Miranda* rights. *See id.* ¶¶ 19, 21. At various times during these interviews, the defendant lied to law enforcement agents, repeatedly denying

2

any intent to travel to Syria or join ISIS. However, the defendant ultimately admitted his criminal conduct. As this Court summarized, during the August 29 interview:

> . . . [T]he defendant said that he had become increasingly religious, and described his discussion with Ahmed about ISIS, his travel from Saudi Arabia to Jordan, and his and Ahmed's use of Twitter and Snapchat to find a way into Syria. He also explained that he sold his PlayStation and bought a smartphone so that they could get access to the internet overseas and contact someone who could help them enter Syria. . . . [H]e acknowledged that they intended to get into ISIS-controlled territory. When [a law enforcement agent] asked the defendant for his "ultimate destination," the defendant answered, "It was ISIS, yeah." He also admitted that he lied to [law enforcement agents during a previous interview].

Suppression Decision at 11-12 (internal citations omitted). In addition, the defendant admitted that he was going to fight for ISIS—including admitting he was "willing to pick up a machine gun and kill somebody"—and that he planned to be a martyr and to die for ISIS. On February 7, 2022, the Court denied the defendant's motion to suppress his statements to law enforcement agents, finding, among other things, the defendant's statements were knowing and voluntary.

The defendant pleaded guilty to Count Two of the Indictment in April 2025.

II.     Applicable Law

The Supreme Court has explained that the sentencing court "should begin all sentencing proceedings by correctly calculating the applicable [U.S. Sentencing Guidelines ("Guidelines" or "U.S.S.G.")] range. *Gall v. United States*, 552 U.S. 38, 49 (2007). The Supreme Court further has explained that "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Id.* The sentencing court "should then consider all of the [18 U.S.C.] § 3553(a) factors to determine whether they support the sentence requested by a party." *Id.* at 49-50. In doing so, the court "may not presume that the Guidelines range is reasonable," but "must make an individualized assessment based on the facts presented." *Id.* at 50 (internal citation omitted).

Title 18, United States Code, Section 3553(a) provides, in part, that in imposing a sentence, the court shall consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; [and]
>
> (2) the need for the sentence imposed--
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

3

> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; [and]
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a). "[I]n determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, [the court] shall consider the factors set forth in section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a).

At sentencing, "the court is virtually unfettered with respect to the information it may consider." *United States v. Alexander*, 860 F.2d 508, 512-13 (2d Cir. 1988). Indeed, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661.

III. The Guidelines Calculation

The government agrees with the Guidelines calculation set forth in the PSR, which is as follows:

| | | |
|---|---|---:|
| Base Offense Level (U.S.S.G. § 2M5.3(a)) | | 26 |
| Plus: | Offense involved the provision of material support and resources with the intent that they be used to commit or assist in the commission of a violent act (U.S.S.G. § 2M5.3(b)(1)(E)) | +2 |
| Plus: | Terrorism enhancement (U.S.S.G. § 3A1.4(a)) | +12 |
| Minus: | Timely acceptance of responsibility (U.S.S.G. § 3E1.1(a)-(b)) | <u>-3</u> |
| **Total Offense Level:** | | **<u>37</u>** |

*See* PSR ¶¶ 26-36. This calculation is consistent with the Guidelines calculation to which the defendant stipulated as part of his plea agreement. *See* Court Ex. 1 ¶ 2. Given that the defendant's offense involved, or was intended to promote, a federal crime of terrorism, his criminal history category is Category VI. *See* PSR ¶ 87; U.S.S.G. § 3A1.4(b). This yields a Guidelines range of 360 months to life imprisonment; however, because the statutorily authorized maximum sentence is 240 months (20 years), the effective Guidelines range is 240 months' imprisonment. *See* PSR ¶ 87.

IV.     The Court Should Impose a Meaningful Sentence, Which Is Sufficient,
        But Not Greater Than Necessary, to Achieve the Goals of Sentencing

The defendant traveled to the Middle East to join ISIS, one of the deadliest terrorist organizations in the world, in order to fight and martyr himself on its behalf.  The defendant's criminal conduct is exceptionally serious, and his various attempts to minimize his conduct—including by claiming that he never planned to use violence—are wholly unavailing.

Before traveling to the Middle East to join ISIS, the defendant understood that ISIS was a violent terrorist organization that killed people.  Indeed, he had watched ISIS propaganda online, including video of a man being burned alive, and later possessed propaganda depicting hangings.  The defendant nevertheless sold his gaming system to help facilitate his and Ahmed's travel to ISIS-controlled territory.  The defendant's goal in attempting such travel was to join ISIS and fight on ISIS's behalf, including by using a machine gun to kill others and by martyring himself.  Tellingly, the draft note on the device recovered from the defendant and Ahmed leaves no ambiguity that was the defendant's intent:  "[W]e have made it to Dawlatul Islam [ISIS] in Syria.  In sha Allah [God willing] we will join the Jihad very soon and in Sha Allah [God willing] we will then join the ranks of the Shuhada [martyrs]."  The defendant's admissions regarding his intent to travel to Syria, join and fight for ISIS, kill others, and martyr himself were not the product of the manner in which he was questioned by law enforcement agents, as the defendant suggests in his sentencing memorandum.  *See* Def. Mem. at 12.  Rather, the defendant's admissions are a reflection of his true intent in attempting to travel to ISIS-controlled Syria.  Moreover, the defendant's repeated lies to law enforcement, attempting to obfuscate both his conduct and his true intent, reflect his appreciation of the seriousness and illegality of his crimes.

The defendant's efforts to minimize his conduct in this case are a cause for concern, insofar as the defendant came close to effectuating violence on behalf of ISIS.  To the extent the defendant believes that his conduct was largely harmless, and therefore might feel free to engage in such conduct again, he is at risk of recidivism—a grave risk in light of the seriousness of his crimes.  The defendant's baseless efforts to deny the gestalt of his crimes thus underscore the importance of specific deterrence and protecting the public.  *Cf.* 18 U.S.C. § 3553(a)(2)(B), (C).

Other defendants who have engaged in comparable conduct to the defendant's have been sentenced to terms of imprisonment commensurate with the Guidelines in this case.  For example, in *United States v. Saleh*, No. 15-CR-517 (WFK), the defendant was sentenced to 360 months' imprisonment for attempting to provide material support to ISIS after making several attempts to travel overseas and join ISIS.  In *United States v. Redzepagic*, No. 17-CR-228 (DRH), the defendant, who also made several unsuccessful attempts to travel overseas and join ISIS, pleaded guilty to providing material support to ISIS and al-Nusrah Front, and received a 200-month term of imprisonment.  In neither of these cases were the defendants able to depart the United States to travel to join ISIS, despite multiple efforts.  Here, the defendant traveled to the Middle East in his effort to join ISIS, expressed willingness to kill on behalf of ISIS, and affirmed his intent to support ISIS by dying as a martyr for ISIS's cause.

The sentence imposed on the defendant must reflect the seriousness of the conduct, deter the defendant specifically from committing further crimes, deter others from traveling to join foreign terrorist groups such as ISIS and conducting attacks on behalf of or at the direction of terrorist groups, and promote respect for the law.

In this case, notwithstanding the defendant's exaggerations regarding his role, the parties agree that Ahmed bears greater culpability than the defendant. As the Court is aware, Ahmed, who recruited the defendant into the scheme and does not carry all of the same mitigating factors, was sentenced to 153 months' imprisonment following his guilty plea. Moreover, the defendant's serious mental health history is properly considered as a mitigating factor under Section 3553(a)(1), and ought to be afforded substantial mitigating weight in this case.

The government also agrees with Probation that a fine is not warranted. *See* PSR ¶ 85.

V.   The Court Should Impose the Supervised Release
     <u>Conditions Set Forth in the Plea Agreement</u>

The government respectfully requests that the Court order the conditions of supervised release to which the parties stipulated, as set forth in the defendant's plea agreement. *See* Court Ex. 1 ¶ 5(d). Specifically, the defendant "stipulate[d] to the following conditions of supervised release":

    a.    Compliance with all treatment prescribed by the Mental Health Professional, including but not limited to (i) in-patient treatment at the Mental Health Facility; (ii) out-patient treatment at the Mental Health Facility; (iii) prescription of medication or modification of existing prescriptions; and (iv) any other treatment prescribed by the Mental Health Professional. Should the defendant object to any treatment, or want to seek a second opinion, he will make those objections and requests to the Court through Probation after providing notice to the government.

    b.    A threat assessment evaluation by a trained evaluator selected by the government, and follow-up evaluations as recommended by the evaluator. The defendant will submit to any programs recommended by the evaluator (including, but not limited to, deradicalization programs), and agree to any additional conditions of release if recommended by the evaluator following this assessment. Should the defendant object to any recommended program or additional condition, he will make those objections and requests to the Court through Probation after providing notice to the government.

    c.    Consent to search any residence, electronic devices, and social media accounts belonging to or used by the defendant, by Probation or the Federal Bureau of Investigation ("FBI") without a warrant or advance notice.

    d.    Monitoring of electronic devices and social media accounts by Probation or

    the FBI, including installation of any necessary monitoring software, as deemed appropriate by Probation.

  e. A limit on the number of electronic devices and social media accounts (initially agreed to be not more than one phone, one computer, and one social media account) as deemed appropriate by Probation. The defendant will provide notice to Probation before changing any device or account, and will seek the government's consent for any additional devices or accounts.

*Id.*

  The government also respectfully requests that the Court impose a lifetime term of supervised release, as the defendant stipulated and agreed to in the plea agreement. *See id.* ¶ 5(b). As the defendant agreed in connection with the plea agreement, a lifetime term of supervised release is appropriate based on the facts and circumstances of this case, and pursuant to the factors enumerated in Section 3553(a). Given the defendant's conduct and the particularly dangerous consequences of any recidivism in this case, a lifetime term of supervised release remains appropriate, just as it was when the defendant entered into the plea agreement approximately four months ago.

## VI. Conclusion

  The government respectfully requests that the Court impose a meaningful sentence, which is sufficient, but not greater than necessary, to achieve the goals of sentencing.

          Respectfully submitted,

          JOSEPH NOCELLA, JR.
          United States Attorney
          Eastern District of New York

     By: /s/ Meredith A. Arfa
          Meredith A. Arfa
          Assistant United States Attorney
          (718) 254-6025

cc: Clerk of the Court (by ECF)
   Defense Counsel (by ECF)